IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

```
SHELIA ROBINSON, o/b/o D.R.,    :
                                :
     Plaintiff,                 :
                                :
vs.                             :
                                :    CIVIL ACTION 12-0356-M
MICHAEL J. ASTRUE,              :
Commission of Social Security,  :
                                :
     Defendant.                 :
```

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. § 1383(c)(3), Plaintiff[1] seeks judicial review of an adverse social security ruling which denied a claim for Supplemental Security Income for Children (hereinafter *SSI*) (Docs. 1, 13-14).  The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 21).  Oral argument was waived in this action (Doc. 20).  Upon consideration of the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

---

[1]Although this action was actually brought by his Mother, the Court will refer to the Child as the Plaintiff.

1

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Plaintiff was nine years old and had completed a third-grade education (Tr. 31). In claiming benefits, Plaintiff alleges disability due to Attention Deficit Hyperactivity Disorder (hereinafter *ADHD*), (Doc. 13).

The Plaintiff filed an application for SSI on March 25, 2009 (Tr. 88-91; *see also* Tr. 10). Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that although Robinson suffered from ADHD, he was not disabled (Tr. 10-22). Plaintiff requested review of the hearing decision (Tr. 84-86) by the Appeals Council, but it was denied (Tr. 1-5).

Plaintiff claims that the opinion of the ALJ is not

supported by substantial evidence.  Specifically, Robinson alleges that:  (1) The ALJ did not properly consider the opinions of the examining psychologist; and (2) the ALJ improperly determined that he did not have marked impairments in at least two of the functional equivalence domains (Doc. 14).  Defendant has responded to—and denies—these claims (Doc. 16).  The evidence of record follows.

On May 18, 2009, a questionnaire was completed by Robinson's second-grade teacher, Carolyn Powe (Tr. 155-22).  The Teacher noted that she had spent seven hours a day, five days a week for nine months with him; he had been absent a lot, going to the Alternative School and seeing his doctor for ADHD.  She noted that he had a slight problem with acquiring and using information and stated that he is constantly moving around, having a hard time staying focused (Tr. 116).  Powe indicated that Plaintiff has a serious problem with attending and completing tasks and with interacting and relating with others; she has had him removed from the classroom, moved him around within the classroom, sent him to the principal's office, arranged for student-teacher conferences, and other things to combat the problem (Tr. 117-18).  The Teacher stated that Davis did not work independently.  Plaintiff has no problems with moving about and manipulating objects (Tr. 119).  Although Robinson can take care of his personal and physical needs, he

has serious problems with being patient, handling frustration, and dealing with his emotional needs (Tr. 120). Powe noted that Plaintiff was calmer after taking his medication (Tr. 121).

Third grade school records show that Robinson scored B-'s in language, math, science, and social studies, and a D+ in reading for the year (Tr. 156).

Treatment records show that Dr. Huey Kidd treated Plaintiff for coughs, sore throats, and an instance of lymphadenopathy from December 2007 through March 2009 (Tr. 157-66).

Records from Southwest Alabama Mental Health (hereinafter *SAMH*) show that Robinson was first examined on November 19, 2008 for hyperactivity and getting into trouble at school (Tr. 167-85). On March 2, 2009, Plaintiff was diagnosed with ADHD, impulsive type, with a GAF of $40^2$ (Tr. 181). His treatment plan included individual therapy, family support, medications, and diagnostic testing (Tr. 174). On April 24, it was noted that medications were changed due to continued problems at school (Tr. 170). On May 15, 2009, Robinson's mother said that he was doing better in school and at home; his teachers reported that he was more focused and less active (Tr. 168).

---

[2]"A GAF score indicates serious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job)." http://www.gafscore.com/

4

On May 26, 2009, William H. Simpson, Ph.D.,[3] a non-examiner for the Social Security Administration, completed a Childhood Disability Evaluation Form, in which he indicated that Robinson suffered from ADHD, impulsive/hyperactive type (Tr. 186-91). Simpson went on to find that Plaintiff had less than marked limitations in his ability to acquire and use information, attend and complete tasks, and interact and relate with others, and that he had no limitations in moving about and manipulating objects, caring for himself, and health and physical well-being. These determinations were made based on the evidentiary record in existence at that time.

On June 18, 2009, records from SAMH show that Plaintiff's Mother reported that he was only presenting behavioral problems occasionally (Tr. 198). On August 21, Robinson was reported to be doing well and that no problems had been reported at school; he was noted to be stable (Tr. 195-96). On October 16, the Mother said that Plaintiff was doing ok though he was getting hyper at school in the afternoons; his medications were adjusted (Tr. 193-94). On December 18, 2009, Robinson was characterized as stable (Tr. 210). On January 22, 2010, Plaintiff's Mother said that he was doing well and had improved grades in school;

---

[3]Neither Simpson nor the Social Security Administration provides any indication of his educational experience or profession. As he is providing a mental health evaluation, the Court will presume he is a Psychologist.

5

the increased medication dose in the afternoon helped with hyperactivity (Tr. 209).  On March 19, Robinson was noted to be stable (Tr. 208).  On May 4, Plaintiff's Grandmother reported that he was doing well in school and had not gotten into trouble in a long time (Tr. 207).  Robinson was said to be doing well on June 15 and characterized as stable several days later (Tr. 205-06).

    On July 7, 2010, Plaintiff was seen by Psychologist John R. Goff who noted that he had access to other evidentiary evidence of record (Tr. 213-19).  On examination, Robinson's discourse was logical and coherent and he put forth adequate effort.  On the WISC-IV, Plaintiff received a full scale IQ score of 76, signaling borderline range of psychometric intelligence; this score was incompatible with scores from the Otis-Lennon School Ability Index which indicated average scores.  The Reitan-Indiana Aphasia Screening Test demonstrated that he could, at least, read at the second grade level and that he was having trouble reading at the fourth grade level; he could perform simple math problems on paper, but could not do them in his head.  On the WIAT-II, Robinson received scores in the average range though his comprehension was at the third grade level; other scores were at the fourth grade level.  He did well in spelling.  The Quotient ADHD System showed that Plaintiff was in motion a good deal, but was still able to maintain his focus,

6

maybe explaining why his grades had not been affected by his hyperactivity. Goff noted no thought or mood disorders and stated that Robinson functioned in an age appropriate manner in cognition and communication; the Psychologist noted deficits in concentration, persistence, and pace. Goff's diagnosis was ADHD of the hyperactive/impulsive type; he ruled out Oppositional Defiant Disorder. Goff went on to give his opinion that Plaintiff had marked limitations in his ability to attend and complete tasks and in interacting and relating with others (Tr. 218).

At the evidentiary hearing, Robinson's Mother testified that he does not do the things around the house that she asks him to do; he gets distracted and starts to play (Tr. 35). The Mother testified that her son had been sent to the Alternative School three or four times and had had four or five in-school suspensions in the previous year (Tr. 36). Robinson cannot sit and watch a thirty-minute cartoon; he cannot stand in line and wait with others (Tr. 37). Plaintiff would not share with others, but would fight with them (Tr. 37-38).

In her decision, the ALJ determined that Robinson suffered from ADHD, but that he was not disabled (Tr. 10-22). In reaching this decision, the ALJ summarized all of the evidence of record and then determined that great weight was to be given to the conclusions of non-examiner Simpson; less weight was

7

given to the opinions of Psychologist Goff (Tr. 16). Little weight was given to the Teacher Questionnaire completed by Powe (*id.*). The ALJ found that Plaintiff's symptoms "are controlled with medication and that he has no 'marked limitation in any of the functional equivalence domains,'" stating that the "finding is supported by the testimony of the claimant's mother" (Tr. 16). This concludes the relevant evidence of record.

In bringing this action, Robinson has asserted that the ALJ did not properly consider the opinions of the examining Psychologist. More specifically, Plaintiff asserts that the ALJ improperly rejected the opinions of Psychologist Goff and Teacher Powe (Doc. 14, pp. 7-9). Plaintiff has also expressed concern that the ALJ accepted the opinion of a non-examining physician over that of an examining physician.

It should be noted that "although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981);[4] *see also* 20 C.F.R. § 404.1527 (2012). The Court further notes that the opinion of a non-examining doctor

---

[4] The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

8

"is entitled to little weight and taken alone does not constitute substantial evidence to support an administrative decision." *Swindle v. Sullivan*, 914 F.2d 222, 226 n.3 (11th Cir. 1990) (*citing Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985)).

The Court first notes that there is very little evidence in this record. The Court further notes that the evidence available to Simpson, at the time he completed his report, was even smaller. Since he did not examine Robinson himself, he had to rely on the records submitted by Plaintiff's Mother, the Teacher Questionnaire contributed by Powe, and seven months of notes from Southwest Alabama Mental Health. The Court cannot say that Simpson's conclusions are supported by the evidence he cites.

However, the Court finds that the medical evidence from the record, as a whole, supports the ALJ's conclusions, which happen to be the same as Simpson's. Specifically, the ALJ found that "[w]hile [Powe's] assessment may have been completely accurate, it was not completed at a time when the claimant's medication had been fully optimized. [L]ater medical records show that the claimant's mother reported that his behavior improved at school and that there were far fewer problems in the third grade" (Tr. 16). The Court finds the ALJ's determination, in rejecting Powe's findings, to be supported by SAMH's later records.

9

Plaintiff has asserted, in connection with this claim, that the ALJ stated that Simpson's report was supported by Robinson's Mother's testimony; Plaintiff goes on to point out testimony that contradicts the ALJ's finding (Doc. 14, p. 7; *cf.* Tr. 33-38).  The Court notes that records from SAMH clearly show that Robinson's Mother and Grandmother stated that the Child had shown improvement with changes in his medication and was doing much better.  Although not clearly stated by the ALJ, her decision implicitly finds that the statements made to SAMH by the Mother are the statements she believed.

As for Psychologist Goff, the ALJ found that less weight was to be given to his opinion that Plaintiff had marked limitations in the domains "Attending and Completing Tasks" and "Interacting and Relating with Others" (Tr. 16).  The ALJ went on to specifically note that the

> opinion is not consistent with the treatment notes of the claimant's therapist or psychiatrist.  It is also inconsistent with Dr. Goff's own examination notes.  He reported that the claimant's social skills were fine on the day of examination in spite of not having taken his medication, that this claimant reported having many friends, and that adequate rapport was established. He also reported that objective testing of the claimant's attention showed normal results.

(Tr. 16).

The Court finds substantial support for the ALJ's conclusions in rejecting Psychologist Goff's conclusions.

Plaintiff has also claimed that the ALJ improperly determined that he did not have marked impairments in at least two of the functional equivalence domains, "Attending and Completing Tasks" and "Interacting and Relating with Others" (Doc. 14, pp. 9-11).  In making this claim, Robinson relies on the evidence provided in Powe's Questionnaire and the testimony given at the evidentiary hearing by his Mother.

The Court has already found substantial support for the ALJ's conclusion in giving little weight to the Teacher's evaluation, as evidence from SMAH over the course of the year following that evaluation showed much improvement with the adjustment of medications.  The Court has also already noted that the Mother's testimony at the hearing is at odds with statements made to SAMH and that the ALJ, in her decision, implicitly credited the SAMH testimony over the other.  The Court can find no error in that decision.  The Court also finds no error in the ALJ's finding that Goff's determinations were not supported by the evidence.

Plaintiff has raised two claims in bringing this action.  The Court finds no error in the ALJ's reasoning with regard to these two claims.  Although the Court cannot say that the ALJ's decision is supported by overwhelming evidence, it is supported

11

by substantial evidence.

Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Perales*, 402 U.S. at 401.  Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**.  Judgment will be entered by separate Order.

DONE this 16th day of January, 2013.

s/BERT W. MILLING, JR.<br>
UNITED STATES MAGISTRATE JUDGE